UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO CARPANEDA, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>DOMINO'S PIZZA, INC.; DOMINO'S, INC.; DOMINO'S PIZZA, LLC; PMLRA PIZZA, INC.; and HENRY ASKEW,<br><br>                    Defendants. | CIVIL ACTION<br>NO. 13-12313-WGY |

YOUNG, D.J.                                         March 5, 2015

<u>MEMORANDUM AND ORDER</u>

## I.   INTRODUCTION

Eduardo Carpaneda ("Carpaneda"), the plaintiff in this matter, moves for an award of attorneys' fees pursuant to Mass. Gen. Laws ch. 149, section 150 and Mass. Gen. Laws ch. 151, section 20. Pl.'s Pet. Att'y's Fees & Costs ("Pl.'s Pet."), ECF No. 55. Carpaneda brought an action on behalf of himself and others similarly situated against Domino's Pizza, Inc.; Domino's Pizza LLC (collectively "Domino's"); PMLRA Pizza, Inc. ("PMLRA"); and Henry Askew ("Askew") (collectively, the "Defendants") for violations of the Massachusetts Minimum Wage

1

Law and the Massachusetts Tips Law. See Decl. Daniel J. Blake,
Ex. 1, Class Action Compl. ("Compl.") ¶ 1, ECF No. 2-1.
Carpaneda was represented by attorneys Stephen Churchill
("Churchill") and Brant Casavant ("Casavant") of Fair Work, P.C.
Id. at 8; Notice Appearance, ECF No. 47. Pursuant to a Rule 68
Offer of Judgment, Carpaneda secured the full amount of the
requested damages - $19,500. Offer J., ECF No. 51; Aff. Stephen
Churchill ("Churchill Aff.") ¶ 11, ECF No. 56. Carpaneda then
filed a petition requesting that this Court order attorneys'
fees and costs in the amount of $41,320.00 and $2,098.75,
respectively. Pl.'s Pet. 8. PMLRA and Askew oppose the
requested amount and ask this Court to grant an attorneys' fee
totaling $19,510.00. Resp. Defs. PMLRA Pizza, Inc. & Henry
Askew Pl.'s Pet. Att'ys' Fees & Costs ("Defs.' Resp.") 10, ECF
No. 58.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Merits Case

Carpaneda is a delivery driver employed by PMLRA. Compl. ¶
9. Throughout the course of his employment he received a
"tipped minimum wage" of $3.00 per hour, plus tips. Id. Askew
is the president of PMLRA, a franchisee of Domino's. Id. ¶¶ 7-
8.

Carpaneda filed a class action complaint in the
Massachusetts Superior Court against Domino's, PMLRA, and Askew,

alleging violations of the Massachusetts Minimum Wage Law and the Massachusetts Tips Law. Compl. In his complaint, Carpaneda asserted that Domino's and PMLRA do a substantial amount of business through pizza delivery, thus relying heavily on delivery drivers. Id. ¶ 10. Domino's and PMLRA charge customers a delivery fee of $2.50 that is retained by the Defendants, not paid to the delivery driver. Id. ¶ 11. A reasonable customer, Carpaneda argued, would believe that the delivery charge was a tip to be paid to the delivery driver, and therefore would not tip the driver himself. Id. Carpaneda claimed that because customers believed that the delivery charge paid to Domino's was a tip, Carpaneda and other drivers similarly situated did not receive the state minimum wage of $8.00 per hour and Domino's reserved money to which the drivers were lawfully entitled. See id. ¶ 21. Carpaneda requested certification of a class of delivery drivers, damages totaling the difference between the tipped minimum wage of $3.00 per hour and the required minimum wage of $8.00 per hour, and attorneys' fees and costs. Id. at 7-8.

The Defendants removed the action to federal court. Notice Removal, ECF No. 1. This dispute, however, did not reach trial, nor was class certification determined, because the parties agreed upon an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. Offer J. All Defendants, including PMLRA

and Askew, agreed to allow judgment to be entered against them, as to Carpaneda alone, in the amount of $19,500 plus "reasonable attorneys' fees and costs relating to this action." Id. Following the entry of the Offer of Judgment, Carpaneda petitioned this Court for an award of attorneys' fees and costs. Pl.'s Pet.

### B.   Attorneys Churchill and Casavant and Their Fees

Carpaneda retained attorneys Churchill and Casavant from Fair Work, P.C. to represent him and others similarly situated in this action.  Compl. 8; Notice Appearance, ECF No. 47. Churchill is a partner at Fair Work P.C.  Churchill Aff. ¶ 2. He received a law degree from Harvard Law School and has over twenty years of experience representing plaintiffs in employment disputes.  Id. ¶¶ 1, 8.  In addition, Churchill is a clinical instructor and visiting professor teaching employment law at Harvard Law School.  Id. ¶ 2.

Casavant is an associate with Fair Work, P.C.  Id. ¶ 9.  He received his law degree at Northeastern University and was admitted to the Massachusetts Bar in 2008.  Id.  Casavant has spent the last five years of his career representing plaintiffs in employment disputes.  Id.

Churchill represents that he and Casavant spent a total of 105.8 hours on Carpaneda's case – 81.5 for Churchill and 24.3 for Casavant.  Id. ¶ 7.  Churchill billed $425.00 per hour, and

Casavant billed $275.00 per hour.  Id. ¶¶ 8-9.  Additionally,
Churchill asserts that the total costs associated with the case
reached $2,098.75.  Id. ¶ 10.  The requested costs are
uncontested.  See Defs.' Resp.

## III. ANALYSIS

It is undisputed that Churchill and Casavant are entitled
to an award of attorneys' fees.  Both the Massachusetts Tips Law
and the Massachusetts Minimum Wage Law allow a prevailing
plaintiff to recover attorneys' fees.  Mass. Gen. Laws ch. 149,
§ 150; Mass. Gen. Laws ch. 151, § 20.  Additionally, the
parties' Offer of Judgment agreement includes an award of
attorneys' fees.  Offer J.  Because the parties do not dispute
that an award of attorneys' fees is appropriate, the only issue
is what constitutes reasonable attorneys' fees.

Churchill and Casavant assert that they spent a total of
105.8 hours working on Carpaneda's case.  Churchill Aff. ¶ 7.
Churchill billed 81.5 hours at the rate of $425.00 per hour, and
Casavant billed 24.3 hours at the rate of $275.00 per hour for a
total of $41,320.00.  Id. ¶¶ 7-9; Pl.'s Pet. 8.  PMLRA and
Askew, however, assert that reasonable attorneys' fees should be
assessed at $19,510.00.  Defs.' Resp. 10.

### A.    The Lodestar Calculation

PMLRA and Askew assert three grounds for reducing the
lodestar calculation asserted by Carpaneda.  First, they argue

5

that Carpaneda's attorneys billed for an unreasonable number of hours.  Id. at 3-7.  Second, they assert that Churchill and Casavant's hourly rate is unreasonable.  Id. at 7-8.  Finally, they argue that this Court should make "further equitable adjustments" based on the relatively small amount that the plaintiff recovered.  Id. at 8-10.

### 1.  Legal Framework

The lodestar is "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011).  The moving party bears the burden of producing appropriate documentation to support their lodestar calculation. Id.  Relevant documents may include, but are not limited to, "contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates." Id.  The opposing party may counter these calculations, and the court may "subtract[] duplicative, unproductive, or excessive hours."  Id. (alteration in original) (quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001)) (internal quotation marks omitted).

### 2.  Reasonable Hours Expended

PMLRA and Askew claim that Churchill and Casavant billed for an unreasonable number of hours spent working after the Offer of Judgment was submitted, meeting with an unnecessary

6

witness, working on the motion to dismiss, and conducting and
responding to discovery. Defs.' Resp. 3-7.

### a.  Hours Billed After the Offer of Judgment

PMLRA and Askew assert that all hours billed after
Carpaneda received the Offer of Judgment on March 31, 2014,
should be excluded from an award of reasonable attorneys' fees.
Id. at 4.  Churchill billed 17 hours after receiving the Offer
of Judgment, and Casavant billed 4.8 hours.  See Churchill Aff.,
Ex. 2 ("Hours Billed") 2-3, ECF No. 56-2.  PMLRA and Askew argue
that all of these hours are unnecessary because Carpaneda was
offered the full amount of his claim, and therefore any
additional work is simply excessive.  Defs.' Resp. 4.

PLMRA and Askew do not dispute the validity of the detailed
contemporaneous records that Churchill and Casavant prepared and
submitted to this Court.  The billing records show, and the
defendants agree, that Churchill billed 9.2 hours for time spent
preparing and attending Carpaneda's deposition.  Hours Billed 2;
Defs.' Resp. 4.  Churchill received the Offer of Judgment on
March 31, 2014, and Carpaneda's deposition was scheduled for the
following day.  Hours Billed 2; Defs.' Resp. 4.  Churchill
contacted opposing counsel and offered to cancel or postpone the
deposition, but opposing counsel informed Churchill that they
wished to go forward with the deposition because of the tight
discovery schedule and rapidly approaching trial date.  Defs.'

7

Resp. 4 & n.2; Pl.'s Reply Supp. Pet. Att'ys' Fees & Costs ("Pl.'s Reply"), Ex. 1, Emails Between Eric LeBlanc & Stephen Churchill, ECF No. 63. Churchill prepared for and attended the deposition as agreed on by all parties. This Court does not find excessive the 9.2 hours Churchill spent preparing for and attending the deposition, especially in light of the fact that PMLRA and Askew could have avoided this cost by agreeing to postpone the deposition. Accordingly, this Court will not deduct this time from the award of attorneys' fees.

Speaking more broadly, PMLRA and Askew ask this Court to deduct all hours worked after the Offer of Judgment was submitted, not only those spent on the deposition. Defs.' Resp. 4-5. They claim that for the Court to do otherwise would discourage settlement and would encourage attorneys to pad their hours during the ten days they are allotted to consider a settlement offer. Id. As stated above, Churchill billed 17 hours following the Offer of Judgment and Casavant billed 4.8. See Hours Billed 2-3. Again, this Court has the benefit of undisputed, detailed, contemporaneous billing records; these records show that Churchill billed 4.0 hours reviewing the offer, discussing it with his client, researching the effects of the potential offer, and conferring with co-counsel on case strategy. Id. at 2. He spent 1.4 hours continuing to work on a motion to amend the complaint. Id. Finally, Churchill billed

8

2.4 hours drafting a petition for attorneys' fees and the associated affidavit. Id. Casavant, meanwhile, billed 4.8 hours after the Offer of Judgment. Id. at 3. He worked 3.3 hours on a motion to amend the complaint, 1.2 hours reviewing, researching, and presenting the Offer of Judgment to Carpaneda, and 0.3 hours reviewing the petition for attorneys' fees. Id. Beyond making broad statements regarding hypothetical effects on parties' willingness to settle other cases, PMLRA and Askew do not offer any argument as to why it was unreasonable for Churchill and Casavant to spend time on these specific tasks. See Defs.' Resp. 4-5. The Court finds that it was reasonable for Carpaneda's attorneys to spend time on each of these items. Indeed, PMLRA and Askew's assertion that this Court should deduct all hours worked after the Offer of Judgment is unreasonable because it assumes that the attorney should not spend time presenting and discussing the proposed offer with their client – something that is part of the attorneys' affirmative duty. Model Rules Prof'l Conduct R. 1.4. This Court thus declines to deduct the hours billed after the Offer of Judgment from Carpaneda's lodestar calculation.

### b. Meeting With Additional Witnesses

PMLRA and Askew claim that Churchill spent 2.3 hours interviewing an unnecessary witness and that this time should be deducted from the lodestar calculation. Defs.' Resp. 5. It is

unclear from PMLRA and Askew's brief exactly what time they are disputing. Presumably, they take issue with Churchill's billable hour record dated October 3, 2013, reading "Meeting with witness regarding case background, Domino's practices." Hours Billed 1. PMLRA and Askew claim that this witness was most likely Marilia Prinholato, an employee whom Churchill and Casavant sought to include as a named plaintiff in their motion to amend the complaint. Defs.' Resp. 5; see also Mot. Am. Compl., ECF No. 50. If that is the case, they assert that time spent with her was actually work on her case and not Carpaneda's. Defs.' Resp. 5. If, however, the witness was not Prinholato, they claim that this witness could not have had any discoverable information because no other witnesses were identified as having any discoverable information in Carpaneda's initial disclosures. Id.

Churchill did not bill a single additional hour for meeting with potential witnesses. See Hours Billed 1-2. This case began as a class action claim; therefore, meeting with witnesses who may have discoverable information related to Domino's practices in general, even when the potential witness does not have specific knowledge of the named plaintiff, lends support to the claims of those similarly situated. A total of 2.3 hours spent interviewing witnesses in a potential class action lawsuit is not unreasonable, excessive, or duplicative. This Court will

not deduct 2.3 hours for time spent meeting with witnesses.

### c.   Time Spent on Motions to Dismiss

PMLRA and Askew argue that the Court should deduct ten hours from the lodestar calculation due to excessive time spent preparing for the motion to dismiss hearing. Defs.' Resp. 6. Churchill billed a total of 37.6 hours for all time related to the defendants' motion to dismiss. Hours Billed 1; Defs.' Resp. 6. PMLRA and Askew do not challenge the 24.9 hours spent "researching, drafting, conferencing about and revising" Carpaneda's opposition to the motion to dismiss. Defs.' Resp. 6. They do, however, take issue with the assertion that Churchill required an additional 12.7 hours to prepare for and attend the hearing on the motion to dismiss. Id. PMLRA and Askew ask the Court to reduce the billable hours by ten. Id.

Although the Court has discretion to deduct "duplicative, unproductive, or excessive hours," Gay Officers Action League, 247 F.3d at 288, it is not clear that the additional hours spent preparing for and arguing the motion to dismiss fall into any of these categories. To the contrary, Churchill was successful in defending against the motion to dismiss, and as such, kept Carpaneda's claim alive. Mem. & Order, ECF No. 38. This fact flies in the face of an argument that time spent preparing was unproductive. Additionally, there is nothing showing that these hours were duplicative or excessive. This Court will not deduct

ten hours from the hours billed for time spent relating to the motion to dismiss.

### d. Time Spent on Deposition of Defendant

The Defendants further challenge the time Churchill spent preparing for the Rule 30(b)(6) deposition of PMLRA. Defs.' Resp. 6. While they do not quarrel with the 3.6 hours billed for the actual taking of the deposition, id.; Hours Billed 2, they argue that it was unreasonable for Churchill to engage in 8.8 hours of preparation – more than twice the length of time of the deposition itself, Defs.' Resp. 6, Hours Billed 2. Accordingly, they ask that the Court deduct 4.4 hours – half the preparation time identified in Churchill's logs – from the lodestar. Defs.' Resp. 6.

The Court declines to make this deduction. In his logs, Churchill notes that a large portion of the time spent preparing for the 30(b)(6) deposition was spent "review[ing] thousands of pages of documents produced by PMLRA and Domino's." Hours Billed 2; see also Pl.'s Reply 4 (noting that the Defendants produced more than 4,700 pages of documents). The Defendants do not dispute that there were thousands of pages worth of documents for Churchill to review before he deposed PMLRA. See Defs.' Resp. 6. Indeed, for Churchill to have spent as short a time as the Defendants say is reasonable reviewing this massive amount of discovery in advance of a key deposition

12

would be, suffice it to say, far from best practices.  Thus, the Court rejects PMLRA and Askew's request to deduct hours spent preparing for the deposition from the lodestar.

### e.    Time Responding to Discovery

Finally, PMLRA and Askew claim that Casavant spent excessive time responding to written discovery.  Defs.' Resp. 7. Casavant billed 15.6 hours responding to thirty-nine interrogatories and forty requests for documents.  Id.; Hours Billed 3.  PMLRA and Askew ask this Court to deduct 5.6 hours from the hours billed, leaving a total of ten hours billed for discovery response.  Defs.' Resp. 7.  In a single-paragraph argument, PMLRA and Askew simply assert that the additional 5.6 hours are excessive, claiming that many of Casavant's answers directed the Defendants to refer to his initial disclosures. Id.

Casavant, however, argues that the seventy-nine total interrogatories and document requests were served in five separate sets and often included numerous subparts.  Pl.'s Reply 4.  Casavant attached a copy of one of PMLRA's interrogatory requests to his reply brief to the Court, many of which require detailed responses.  See Pl.'s Reply, Ex. B, PMLRA Pizza, Inc.'s First Set Interrogs. Pl. Eduardo Carpaneda, ECF No. 63-2. Further, Casavant asserts that responding to seventy-nine interrogatories and document requests in 15.6 hours breaks down

to twelve minutes per request, Pl.'s Resp. 4, a number that is facially reasonable, particularly in light of the many subsections.

It is not readily apparent to the Court that 15.6 hours is excessive time spent responding to discovery. PMLRA and Askew do not provide any documents or specific arguments supporting their claim that a 5.6-hour reduction is appropriate. On the other hand, Casavant provides documentation of the nature of the interrogatories and a clear explanation for the time spent responding. This Court thus will not reduce the hours billed for time spent responding to discovery.

### 3. Reasonable Hourly Rates

In his petition, Carpaneda seeks a rate of $425.00 per hour for Churchill's work and $275.00 per hour for Casavant's work. Pl.'s Pet. 3. PLMRA and Askew argue that fair market rate in this case is $350.00 per hour for Churchill and $200.00 per hour for Casavant. Defs.' Resp. 8.

### a. Legal Framework

When calculating the lodestar figure, courts must determine a reasonable hourly rate for the work performed; a reasonable hourly rate can be determined by looking at the prevailing market rates in the relevant community. Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The party petitioning

14

for an award of attorneys' fees bears the burden "to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 896 n.11.[1]  The Court may also consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 951 (1st Cir. 1984).

### b.    The Parties' Arguments

As the petitioning party, Carpaneda bears the burden of showing that Churchill's and Casavant's rates of $425.00 and $275.00, respectively, are reasonable. Blum, 465 U.S. at 896 n.11.  To support their rates, Churchill and Casavant supply the Court with an affidavit speaking to their education and experience, a record of fees previously awarded, and a significant table of cases showing rates for attorneys with

---

[1] Blum deals with awards of attorneys' fees made under 42 U.S.C. § 1988 to prevailing parties in civil rights cases, not with settlements or employment actions.  In making the above-quoted statement, however, the Supreme Court took care to distinguish § 1988 awards paid by losing parties from traditional arrangements where clients agree ahead of time what rate they will pay. Blum, 465 U.S. at 896 n.11.  Because (as was the case in Blum) discretion in shaping the award here rests with this Court rather than with the parties, the Court feels that the Supreme Court's statements in Blum still ought guide the Court's decision in the present matter despite the slightly different legal context.

equal or lesser experience.  Churchill Aff.; Pl.'s Pet. 3-5.

Churchill argues that his $425.00 rate is reasonable because he graduated from a respected law school and has since practiced law for approximately twenty years.  Pl.'s Pet. 3. Additionally, a significant portion of his experience is directly related to employment law claims.  Id.  Churchill is also a respected member of the legal academic community as a clinical instructor and professor at Harvard Law School.  Id. The Middlesex Superior Court recently awarded Churchill attorney's fees at a rate of $425.00 per hour.  Churchill Aff. ¶ 8; Churchill Aff., Ex. 3, Clerk's Notice, ECF No. 56-3. Churchill also provides the Court with citations to several cases in which attorneys practicing employment law in Boston with equal or fewer years of experience were awarded $425.00-650.00 per hour.  See, e.g., Ansel v. Hyman Cos., No. 05-cv-1534 (Middlesex Superior Ct. Sept. 21, 2012) (awarding fees in an employment law case at a rate of $425.00 per hour to an attorney with twenty years of experience); Monteiro v. City of Cambridge, No. 2010-P-1240 (Mass. App. Ct. Oct. 10, 2012) (awarding fees in an employment discrimination case at the rate of $425.00 per hour to an attorney with eighteen years of experience); Davis v. Footbridge Eng'g Servs. LLC, No. 09-cv-11133 (D. Mass. Aug. 22, 2011) (Gertner, J.) (awarding fees in an action against an employer for failing to pay overtime pay at a rate of $650.00

per hour to an attorney with twelve years of experience); Pl.'s Pet. 4-5, Ex. 1-8 (attaching the memoranda and orders associated with each case).

Similarly, Casavant argues that he was also educated at a well-respected law school. Pl.'s Pet. 5. His five years of experience practicing law have been devoted entirely to representing workers in employment law claims. Id. Casavant lists several significant employment cases where he represented clients. See id. Specifically, he points to Awuah v. Coverall North America, Inc., where this Court awarded him attorney's fees at the rate of $200.00 per hour when he had only two years of experience. 791 F. Supp. 2d 284, 290 (D. Mass. 2011); Pl.'s Pet. 5-6. With three more years of experience, Casavant asserts that a rate of $275.00 per hour is not unreasonable. Pl.'s Pet. 6.

Conversely, PMLRA and Askew argue that "the work performed in this instance required less skill and less experience to achieve success" than the work Churchill performed in the previous case where he was awarded $425.00 per hour. Defs.' Resp. 8. Whereas that case was "a handicap discrimination case that went to trial," they claim that this case only involved "drafting a complaint, drafting and arguing a motion to dismiss, drafting limited discovery and involvement in two depositions." Id. As to Casavant's fees, PMLRA and Askew claim that a rate of

$275.00 per hour is excessive in light of his limited experience and role in this case. Id. A more appropriate rate, they claim, would be $350.00 per hour for Churchill and $200.00 per hour for Casavant. Id.

### c. Reasonable Rate Determination

Churchill and Casavant have met their burden of showing that their fees are within the range of fair market rates for similar work done by attorneys with similar experience. They presented significant data to this Court supporting their request for an award of attorneys' fees at the rate of $425.00 and $275.00 dollars, respectively. Based on recent court-ordered awards and the affidavit of Churchill, there is sufficient documentation for this Court to hold that these rates are within the fair market rate for Churchill and Casavant.

PMLRA and Askew ask this Court to reduce the hourly rates because this case required less skill than others where Churchill was awarded $425.00 per hour, but the only basis for this claim is that this case did not go to trial. This argument requires the Court to accept the assertions that trial requires greater skill than legal research, writing, discovery, and all other pre-trial actions – an argument the Court will not accept. Further, this argument implies that skilled work results in cases going to trial. To reduce the lodestar amount based on this argument would surely deter settlement – an undesirable

result.  Finally, PLMRA and Askew do not present the Court with
any data showing that the actual fair market rate for similar
cases and attorneys reflects their requested rates of $350.00
and $200.00 per hour.

Churchill and Casavant have met their burden of showing
that the requested rates of $425.00 and $275.00 are fair market
rates for the work performed.  PMLRA and Askew have failed to
rebut their claims.  This Court therefore holds that $425.00 per
hour is a reasonable rate for Churchill in this case, and
$275.00 is a reasonable rate for Casavant.

### 4.    Lodestar Conclusion

This Court holds that the appropriate lodestar calculation
is as follows: Churchill - 81.5 hours at a rate of $425.00 per
hour for a total of $34,637.50; Casavant - 24.3 hours at a rate
of $275.00 per hour for a total of $6,682.50.  The total
lodestar amount is thus $41,320.00.

### B.    Equitable Adjustments

PMLRA and Askew assert that in addition to, or in place of,
reducing the reasonable hours billed and the hourly rate, this
Court should make a downward adjustment in the fee award due to
"equitable considerations." Defs.' Resp. 9.  Specifically, they
claim that because Carpaneda received a comparatively small
amount, and Churchill and Casavant "failed" to secure class
certification, the total award of attorneys' fees should

ultimately be reduced.  Id.

### 1.   Legal Framework

Once the lodestar amount has been determined, the Court may adjust that amount up or down as may be appropriate.  McMullen v. Schultz, 428 B.R. 4, 11 (D. Mass. 2010) (Gorton, J.). Several factors determine whether an adjustment is appropriate. These factors include:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorneys' services; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Id.  Although a lodestar adjustment may be appropriate in some cases, "[t]here is a 'strong presumption' . . . that the lodestar figure reflects a reasonable assessment of fees to be awarded."  McDonough v. City of Quincy, 353 F. Supp. 2d 179, 183-84 (D. Mass. 2005) (quoting Sys. Mgmt., Inc. v. Loiselle, 154 F. Supp. 2d 195, 203-04 (D. Mass. 2001), rev'd on other grounds,

303 F.3d 100 (1st Cir. 2002)).

## 2.   **Appropriate Adjustments**

The Court finds no compelling reason why the lodestar amount should be reduced in this case.  Carpaneda recovered $19,500.00, the full amount of his requested monetary damages. Although this number is less than the requested attorneys' fees, it cannot be said that Carpaneda's attorneys did not achieve a desirable result.  Further, the First Circuit has stated that "[t]he fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it." Lewis v. Kendrick, 944 F.2d 949, 957 (1st Cir. 1991).  Similarly, this Court has held that that a modest recovery was not a reason to reduce an attorney fee award.  Connolly v. Harrelson, 33 F. Supp. 2d 92, 96 (D. Mass. 1999).  This Court will not reduce the lodestar amount because of Carpaneda's comparatively small recovery.

PLMRA and Askew also ask this Court to reduce the lodestar amount because Churchill and Casavant failed to secure class certification.  Defs.' Resp. 8.  This argument also fails to convince the Court.  Although PMLRA and Askew characterize the outcome as a failure to secure class certification, they go on to admit that the class was not certified because the Defendants chose to make an Offer of Judgment in the full amount of damages to the named plaintiff before that stage of litigation was

reached.  Id.  Indeed, Churchill and Casavant characterize this course of events as indicating that the Defendants "were so desperate to avoid a class action that they were willing to pick off the named plaintiff by offering him every penny of his estimated damages, and then some."  Pl.'s Reply 2.  The Court declines to accept the Defendants' view of events.  Churchill and Casavant did not "fail" to secure class certification - their client simply accepted an offer that ended the litigation before the Court had the opportunity to address the class nature of the claim.  This is not sufficient to overcome the presumption that the lodestar figure is not a reasonable assessment of the fees.

## IV.  CONCLUSION

This Court GRANTS Carpaneda's petition for attorneys' fees and costs, ECF No. 55.  Attorneys Churchill and Casavant are entitled to fees in the amount of $41,320.00 and costs in the amount of $2,098.75.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE
